| TBM INVESTMENT PROPERTIES, LLC | * | NO. 2024-CA-0306 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| ALICIA DANIELLE KASNEY ET AL. | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-08641, DIVISION "D"
Honorable Monique E. Barial, Judge
\* \* \* \* \* \*
**Judge Sandra Cabrina Jenkins**
\* \* \* \* \* \*\*

(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins, Judge Karen K. Herman)

James E. Uschold
Mark J. Boudreau
JAMES E. USCHOLD, PLC
700 Camp Street, Suite 317
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLANT

Charles L. Stern, Jr.
Richard L. Traina
STEEG LAW FIRM, LLC
201 St. Charles Avenue, Suite 3201
New Orleans, LA 70170

      COUNSEL FOR DEFENDANT/APPELLEE

                                              **JUDGMENT AFFIRMED**
                                              **NOVEMBER 27, 2024**

This matter arises from competing claims to quiet title over property purchased at a tax sale and subsequently, seized and sold at a Sheriff's Sale. Appellant, TBM Investment Properties, LLC ("TBM"), seeks review of the trial court's judgment which granted the motion for summary judgment in favor of Appellee, Alicia Danielle Kasney ("Ms. Kasney"), and dismissed TBM's Petition to Quiet Title with prejudice.

TBM became the assignee of a Tax Sale Certificate resulting from a March 10, 2015 tax sale of property located at 1961 North Tonti Street in New Orleans, Louisiana (the "Property"). Ms. Kasney's chain of title to the Property results from a June 16, 2016 execution of a writ of *fieri facias*. Pursuant to the writ of *fieri facias*, Ms. Kasney's title predecessors obtained a Sheriff's Deed after the Property was seized and sold to satisfy a recorded Administrative Judgment and Notice of Daily Fines imposed for failure to remediate New Orleans City Code ("City Code") violations.

After TBM obtained rights to the Property derivative of the tax sale, TBM filed its Petition to Quiet Title. In response, Ms. Kasney's summary judgment motion argued that she acquired ownership of the Property through her predecessors' Sheriff's Deed and the corresponding failure of TBM and its predecessors to timely assert their title rights to the Property within a year after the

1

recordation of the Sheriff's Deed.   The trial court granted Ms. Kasney's motion for summary judgment, finding that TBM's action had prescribed.

For the reasons that follow, we affirm the trial court's grant of summary judgment in favor of Ms. Kasney.

## FACTUAL AND PROCEDURAL HISTORY

The City of New Orleans (the "City") conducted a tax sale on the Property based on the owners' failure to pay delinquent taxes[1] on March 10, 2015.  Precept Credit Opportunities, LP, ("Precept"), TBM's initial title predecessor, purchased the tax sale title to the Property.  The Tax Sale Certificate in favor of Precept was executed on April 8, 2015, and recorded in the conveyance records of Orleans Parish on April 17, 2015.

On April 25, 2015, the Code Enforcement and Hearings Bureau for the City sent a notice to Precept and the Property's owners which fixed a hearing date for City Code violations relating to the Property. The hearing was held on May 14, 2015, and was attended by a representative of Precept.  The hearing officer found the Property in violation of the City Code and assessed penalties and fines against the Property.  The City Code violations included sanitation, weeds and plant growth, rodent harborage, accessory structures, paint or protective treatment, exterior surfaces, studs, exterior walls, and water boards.  The City Code violations were not corrected; and on October 27, 2015, the City assessed additional penalties

---

[1] Jerry Bernard Key and Edna Hughes Thompson-Key purchased the Property by Credit Sale on January 8, 1979.  Subsequent to a Judgment of Possession entered into on the Keys' Succession, their children were placed in possession.

and fines for a total of $ 11,535.00. The Notice of Daily Fines was recorded in the City's mortgage and conveyance records, and sent to Precept.

On November 4, 2015, the City sought a writ of *fieri facias* to have the Property seized and sold for failure to remediate the City Code violations accrued under the May 14, 2015 Administrative Judgment and the October 27, 2015 Notice of Daily Fines. Precept was named as one of the defendants. On November 17, 2015, Precept was served with the City's Request for Issuance of Writ of Fieri Facias by certified mail.

The Property was sold at a Sheriff's Sale on June 16, 2016, to Justin Landry ("Landry"), Ms. Kasney's initial predecessor in title, for $19,000.00. All nine City Code violations had remained on the Property from the date of inspection, the administrative hearing date, and through the date of the Sheriff's Sale to Landry.

Landry obtained a fee simple title to the property. The Sheriff's Deed was executed on September 23, 2016, and recorded in the Orleans Parish conveyance records on October 3, 2016.

Subsequent thereto, on December 15, 2016, Precept transferred its rights under the Tax Sale Certificate to PCOF Properties, LLC ("PCOF"). In turn, PCOF transferred its rights to Acute Investment Properties, LLC ("Acute") by quitclaim recorded on August 20, 2020. Thereafter, Acute transferred its rights to TBM by quitclaim on May 2, 2022.

At or around the same intervals, Landry transferred his rights to the Property under the Sheriff's Deed by quitclaim to Jurgita Liskauskaite ("Liskauskaite") on

April 17, 2017. Liskauskaite conveyed the Property to MLM Holdings, LLC ("MLM") by Cash Sale on January 29, 2020 for $12,000. MLM then demolished the building on the Property, built a new house on the Property, and then sold the Property to Ms. Kasney on March 30, 2021, for $206,000.00. Ms. Kasney mortgaged the Property to Fidelity Bank on the same date.

On September 15, 2022, TBM filed its Petition to Quiet title, naming Ms. Kasney and Fidelity Bank as defendants. TBM also sought a declaratory judgment establishing it as the property owner pursuant to the tax sale title issued to Precept in 2015.

Ms. Kasney's answer and reconventional demand represented that the Legislature empowered municipalities with certain enforcement mechanisms under La. R.S. 13:2575 and La. R.S. 13:2576, *et seq.*, when a party fails to remediate municipal code violations that pose a threat to the public welfare. She maintained that enforcement mechanisms under La. R.S. 13:2575 and La. R.S. 13:2576, *et seq.* include the issuance of a writ of *fieri facias* to seize and sell properties. Moreover, she contended that La. R.S. 13:2575(C)(1) grants municipalities with a lien or privilege against the property assessed with the violation and the recordation of the lien creates a judicial mortgage. In support of her position that tax sale purchasers have a limited right to redeem properties that were subsequently subject to liens, Ms. Kasney cited La. R.S. 13:2575(C)(2) which states, in part, that:

> However, if the immovable property has been sold for nonpayment of taxes to a tax sale purchaser other than the municipality, and if the right of redemption from the tax sale has not elapsed at least one year prior to the sale pursuant to this Section, the tax sale purchaser shall

4

have a right of redemption from the sale pursuant to this Section until one year after the right of redemption from the tax sale elapses.

She also referenced that La. R.S. 13:2576(A)(3) provides as follows:

> All actions to annul or invalidate sales made hereunder, for any cause whatsoever, and all actions to subject the property to any mortgage which existed before the sale to the purchaser shall be prescribed by the lapse of one year from the date of registry in the conveyance office of the deed to the purchaser.

Ms. Kasney pointed out that the Sheriff's Sale of the Property to Landry took place in September 2016 and the Sheriff's Deed was recorded in the conveyance records in October 2016. Hence, she maintained that TBM's filing of its Petition to Quiet Title in September 2022, well over a year after the recordation of the Sheriff's Deed, was prescribed—the result of which made her the owner of the Property. Ms. Kasney re-urged her reconventional demand allegations in her motion for summary judgment, seeking dismissal of TBM's Petition to Quiet Title and a declaratory judgment that she was the owner.

TBM's opposition countered that the prescriptive provisions of La. R.S. 13:2575 and La. R.S. 13:2576 associated with the City's enforcement authority did not apply in the present matter. TBM premised this argument on its contention that these statutory provisions apply only to blighted properties; and in this case, the statutes were without effect because the Administrative Judgment did not declare the Property blighted. Moreover, TBM represented that the statutes are limited only to actions that subject a property to mortgage, and accordingly, claimed the statutes do not apply because its tax sale did not amount to a mortgage.

5

After a hearing, the trial court rendered judgment, incorporating reasons for judgment, wherein it granted Ms. Kasney's summary judgment motion. The trial court held that TBM's right to assert a claim against the Property to quiet title under the 2015 Tax Sale Certificate was prescribed. The trial court's reasons for judgment included the following:

> Here, La. R.S. 13:2575, coupled with the enforcement capacity of La. R.S. 13:2576, et seq., renders the applicable prescriptive or redemptive period "one year from the date of registry in the conveyance office of the deed to the purchaser." Therefore, where the applicable date of recordation was October 3, 2016—Petitioner's [TBM] rights prescribed October 3, 2017. Notably, even where a three-year redemptive period were to apply, Petitioner's [TBM] right to redeem would have prescribed on April 17, 2019. TBM instituted its first action as it relates to the underlying matter seeking to quiet title on September 15, 2022—over three years too late.

This appeal followed.

## ASSIGNMENT OF ERROR

TBM's sole assignment of error contends the trial court erred by granting summary judgment in favor of Ms. Kasney and dismissing TBM's quiet title action with prejudice based on prescription.

## STANDARD OF REVIEW

Appellate courts review the grant or denial of a motion for summary judgment *de novo*, employing the same criteria that govern a trial court's determination of whether summary judgment is appropriate. *Allen v. Eagle, Inc.*, 2022-0622, p. 3 (La. App. 4 Cir. 2/24/23), 358 So.3d 928, 930 (citing *Maddox v. Howard Hughes Corp.*, 19-0135, p. 4 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337). "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there are no genuine issue as

6

to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). This Court noted in *Harrier Enterprises, LLC v. Imbornone*, 2019-0613, p. 4 (La. App. 4 Cir. 1/29/20), 364 So.3d 396, 398, that the mover's burden of proof in a motion for summary judgment is governed by La. C.C.P. art. 966(D)(1):

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

## DISCUSSION

TBM represents that the trial court misapplied La. R.S. 13:2575(C) and La. R.S. 13:2576(A)(3) in granting Ms. Kasney's motion for summary judgment. However, before we address the merits of TBM's arguments regarding the applicability of these statutes, we note that "[t]hese statutes were enacted to provide the City with the requisite authority to regulate public health, housing, and environmental regulations" so as to protect the community from the adverse effects of abandoned or blighted property. *See Mystery House, LLC v. City of New Orleans*, 2020-0014, p. 9 (La. App. 4 Cir. 11/25/20), 365 So.3d 95, 101. Accordingly, our review shall be conducted within the context of the intended purpose of the statutes.

### *La. R.S. 13:2575(C)/Applicability[2]*

---

[2] The full text of La. R.S. 13:2575(C)states the following:

TBM's arguments against the applicability of La. R.S. 13:2575(C) focus on the enforcement mechanisms available to a municipality under Subsection C(2). This Subsection make unpaid liens "subject to the same provisions of law as govern tax sales of immovable property when the immovable property has been

1) The municipality or parish shall have a lien and privilege against the immovable property in or on which the violation occurred. The lien and privilege shall secure all fines, costs, and penalties which are assessed by the municipality or parish in accordance with this Section and described in the order, judgment, notice of judgment, or lien. For the lien and privilege to arise and exist, the order, judgment, notice of judgment, or lien assessing any fines, costs, and penalties shall be recorded in the mortgage office of the parish in which the immovable property, or any portion thereof, in or on which the violation occurred, is situated. The recordation shall have the effect of a judicial mortgage against the immovable property described therein and may be enforced against the immovable property described therein upon application of the municipality or parish to the clerk of the district court for issuance of a writ in accordance with Code of Civil Procedure Article 2253. The remedies established in this Chapter are nonexclusive and may be pursued independently of each other and in addition to other remedies provided by law. In order for the lien and privilege to arise, the order, judgment, notice of judgment, or lien shall be final and not subject to appeal when recorded in the mortgage office. The lien and privilege shall have ranking as provided by R.S. 9:4821(A)(1).

2) Any liens placed against such immovable property shall be included in the next annual ad valorem tax bill and shall be paid along with such taxes, subject, however, to any valid homestead exemption. Failure to pay the liens shall cause the immovable property in or on which the violation occurred to be subject to the same provisions of law as govern tax sales of immovable property when the immovable property has been declared blighted or a public nuisance by an administrative hearing officer acting in accordance with this Section, the property owners and other parties having interests in the property shall not have a right of redemption. However, if the immovable property has been sold for nonpayment of taxes to a tax sale purchaser other than the municipality, and if the right of redemption from the tax sale has not elapsed at least one year prior to the sale pursuant to this Section, the tax sale purchaser shall have a right of redemption from the sale pursuant to this Section until one year after the right of redemption from the tax sale elapses. In addition, failure to pay the liens shall also cause such liens and privileges to be subject to enforcement in accordance with R.S. 13:2576. Any liens placed against immovable property that has a legal homestead exemption from taxes will become payable ninety days after the death of the owner thereof or immediately upon recordation of any conventional mortgage on the immovable property or transfer of title to a new owner, whichever occurs first.

8

declared blighted or a public nuisance;" and further, limits the right of a tax sale purchaser to redeem property subject to the unpaid lien to one year after the right of redemption from the tax sale lapses.

TBM makes two arguments to support its position that Subsection C(2) should not apply to find its Petition to Quiet Title has prescribed. First, TBM alleges that Subsection C(2) applies only to properties that have been deemed blighted or a public nuisance by an administrative hearing officer. Here, TBM suggests Subsection C(2) does not apply because neither the Administrative Judgment nor the Notice of Daily Fines included an express designation that the Property was deemed blighted or a public nuisance as a result of the City Code violations.

Next, TBM claims that the one-year redemption period in Subsection C(2) for a tax sale purchaser to redeem property subsequently assessed with liens does not apply because the mechanism the City used to enforce the City Code violations was to obtain a writ of *fieri facias* to command the Sheriff to seize and sell the Property. TBM represents that the resulting Sheriff's Deed was not a "code enforcement sale certificate" similar to a tax sale certificate. Consequently, TBM asserts that the Sheriff's Sale was not covered by "the provisions of law as govern tax sales" outlined in Subsection C(2) so as to trigger its application.

Ms. Kasney offers a counter argument that notwithstanding TBM's arguments as to the applicability of Subsection C(2), La. R.S. 13:2575(C)(1) applies to give the City a lien against the Property and creates a judicial mortgage when the lien is recorded. As such, the failure to pay the lien or judicial mortgage subjects the Property to the enforcement mechanisms of not only La. R.S. 13:

9

2575(C)(1), but also the provisions of La. R.S. 13:2576. In particular, Ms. Kasney notes that La. R.S. 13:2576(A) states the following:

> In any municipality or parish, the failure to pay the liens, privileges, judicial mortgages, and any fines, fees, penalties, or hearing costs imposed pursuant to R.S. 13:2575 shall cause the liens, privileges, judicial mortgages, and any fines, fees, penalties, or hearing costs to be enforceable pursuant to the following provisions, in addition to those provided for in R.S. 13:2575:

Ms. Kasney reiterates that La. R.S. 13:2576(A)(3) provides, in part, that "all actions to subject the property to any mortgage which existed before the sale shall be prescribed by the lapse of one year from the date of registry in the conveyance office of the deed to the purchaser." Hence, in applying the provisions of La. R.S. 13:2575(C)(1) in *pari materia* with the provisions of La. R.S. 13:2576(A)3, Ms. Kasney stresses that TBM's Petition to Quiet Title was untimely as it was not filed within a year after the recordation of the Sheriff's Deed.

TBM disputes the applicability of La. R.S. 13:2576(A)(3) on the basis that its Tax Sale Certificate did not create a judicial mortgage. However, in the event the impact of the sale amounted to a sale or assignment of a mortgage, then, we agree with Ms. Kasney that La. R.S. 13:2575(C)(1), combined with the effects of La. R.S. 13:2576(A)(3), would mean that TBM's Petition to Quiet Title had prescribed, regardless of TBM's allegations that the trial court improperly relied on Subsection C(2) to grant summary judgment. Accordingly, we shall defer review of the propriety of the trial court's reliance on Subsection C(2); and instead, first consider the merits of TBM's other claim that the trial court also misapplied La. R.S. 13:2576(A)(3).

### *La. R.S. 13:2576(A(3)/Applicability*

10

TBM asserts that its tax sale is not a mortgage[3] and thus, La. R.S. 13:2576(A)(3)—which applies only to actions that subject a property to a mortgage—should not have been relied on to grant Ms. Kasney summary judgment relief. In opposition, Ms. Kasney cites to La. R.S. 47:1993(G) and *Mooring Tax Asset Group, LLC v. James,* 2014-0109 (La. 12/9/14), 156 So.3d 1143.

Pursuant to La. R.S. 47:1993(G), a lien is created upon the filing of the assessor's tax assessment, and the lien becomes a legal mortgage when the tax remains unpaid after December 31 of the year in which the roll is filed.[4] In

_____

[3] La. R.S. 47:2121 discusses, in pertinent part, the effect of a tax sale and the tax sale title issued to the tax sale purchaser as follows:

**B. Effect of tax sale on property interest.** No tax sale shall transfer or terminate the property interest of any person in tax sale property or adjudicated property until that person has been duly notified and both the redemptive period and any right held by that person to assert a payment or redemption nullity under R.S. 47:2286 have terminated.

**C. Tax sale title.** (1) A tax sale confers on the tax sale purchaser, or on the political subdivision to which the tax sale property is adjudicated, only tax sale title. Tax sale title does not confer on the tax sale purchaser the right of possession of tax sale property that is occupied by the owner and does not confer on the tax sale purchaser the right to make improvements or charge rental or lease payments to the owner or occupants of the tax sale property. If the tax sale property is not redeemed within the redemptive period, then at the termination of the redemptive period, tax sale title transfers to its holder ownership of the tax sale property, free of the ownership and other interests, claims, or encumbrances held by all duly notified persons. Tax sale title is fully transferable and heritable, but any successor of a tax sale title takes it subject to any existing right to redeem the property, or to assert a nullity, to the extent and for the period of time that the right would have existed in the absence of the transfer or succession.

(2) A person who acquires ownership of property through a tax sale title takes the ownership subject to any interests that are not terminated in accordance with this Chapter. Other than taking subject to those interests, the acquiring person's ownership of the tax sale property after termination of the redemptive period is not affected by any lack of notice to the holders of those interests.

[4] Louisiana Revised Statute 47:1993(G) includes the following:

From the day that the roll is filed in the recorder's office, it shall act as a lien upon each specific piece of real estate thereon assessed, which shall be subject to a legal mortgage after the thirty-first day of December of the current year for the payment of the tax due on it, but not for any other tax, which mortgage shall

11

*Mooring Tax Asset*, 2014-0109, p. 12, 156 So.3d at 1151, the Supreme Court noted

that the tax lien and legal mortgage for delinquent taxes can be enforced only by a

tax sale of the property.[5]

In conjunction therewith, Ms. Kasney also references *Central Props. v.

Fairway Gardenhomes, LLC,* 2016-1855, 2016-1946, (La. 6/27/17), 225 So.3d

441.  In *Central Props.,* 2016-1855, 2016-1946, p. 11, 225 So.3d at 448, the Court

held that a tax sale conveys a "tax sale title" to the property, as well as the lien and

legal mortgage created under La. R.S. 47:1993(G), as a consequence of the filing

of the tax roll and the property's subsequent tax delinquency. [6]

---

prime and outrank all other mortgages, privileges, liens, encumbrances, or
preferences, except tax rolls of previous years.

[5] In *Mooring Tax Asset Group*, the plaintiff purchased the tax sale title of the immovable
property sued upon, and the tax sale deed was filed on December 21, 2004 and recorded in the
conveyance records for the Parish of Orleans on April 26, 2005.  The property owners
subsequently sold the property to a third party, who then sold it again to the named defendant,
James.  The sale of the property to James occurred after the three year redemption period had
passed, and the prior owners had not sought to redeem the property.  However, James sought to
annul the tax sale.  The Court held that "[w]hile this tax sale was properly annulled at Mr. James'
urging, Mr. James is responsible for dealing with the consequences of the recorded tax sale. Mr.
James is the party holding the rights and obligations relative to the property and it is Mr. James
who desires to clear the tax deed from his title. Thus, we find it is also Mr. James who must
reimburse Mooring for its costs pursuant to La. Const. art. VII, § 25(C)." 2014-0109, p. 13, 156
So.3d at 1152.

[6] The Court expounded as follows in *Central Props*, 2016-1855, 2016-1946, pp. 11-12, 225
So.3d at 448–49:

Under the tax sale laws as amended in 2008, the tax collector no longer auctions
the real estate itself; instead, the tax collector auctions a tax sale title to the
property, as evidenced by a tax sale certificate per La. Rev. Stat. 47:2155, which
neither transfers nor terminates the property interest of any person in the property.
*See* La. Rev. Stat. 47:2121(B)("No tax sale shall transfer or terminate the property
interest of any person in tax sale property or adjudicated property until that person
has been duly notified and ... the redemptive period ... [has] terminated."; La. Rev.
Stat. 47:2121(C)("A tax sale title confers on the tax sale purchaser ... only tax sale
title. If the tax sale property is not redeemed within the redemptive period, then at
the termination of the redemptive period, tax sale title transfers to its holder
ownership of the tax sale property...."). A "tax sale title" is defined as "the set of
rights acquired by a tax sale purchaser ... pursuant to this Chapter." La. Rev. Stat.
47:2122(22). Thus, we recognize the term "tax sale" actually denotes that it is the

This Court recently followed *Central Props.*' analysis regarding a tax sale's creation of a lien and mortgage creation in *Equity Trust Co., FBO 200267986 (59.51%) & 200267988 (40.49%) v. Thorrick*, 2023-0779, pp. 10-11 (La. App. 4 Cir. 7/10/24), ___ So.3d ___, ____, 2024 WL 3354968, at *5, stating:

> In Louisiana, when a property owner fails to pay taxes, the Parish, through its tax collector, has a lien by operation of law against the property for the unpaid taxes. *See* La. R.S. 47:1993(G); *Cooley v. Williams*, 2022-0564, p. 5 (La. App. 4 Cir. 1/30/23), 358 So.3d 127, 130, *writ denied*, 2023-00289 (La. 4/25/23), 359 So.3d 978 (citing *Centr. Props. v. Fairway Gardenhomes, LLC*, 2016-1855, 2016-1946, p. 11 (La. 6/27/17), 225 So.3d 441, 448-49). Additionally, the tax collector does not auction the real estate itself; "instead, the tax collector auctions a tax sale title to the property, as evidenced by a tax sale certificate per La. [R.S.] 47:2155, which neither transfers nor terminates the property interest of any person in the property." *Cooley*, 2022-0564, p. 5, 358 So.3d at 130 (citing *Centr. Props.*, 2016-1855, 2016-1946, p. 11 (La. 6/27/17), 225 So.3d 441, 449). "A 'tax sale title' is 'the set of rights acquired by a tax sale purchaser.' " *Id.* (citing La. R.S. 47:2122); *see also* La. R.S. 47:2121(C)(1) (a "tax sale confers on the tax sale purchaser, or on the political subdivision to which the tax sale property is adjudicated, only tax sale title"). The Louisiana Supreme Court recognized that "such set of rights acquired by the tax sale purchaser amounts to a lien on the property." *Id.* (citing *Centr. Props.,* 2016-1855, 2016-1946, p.12, 225 So.3d at 449); *see also Flag Boy Properties, LLC v. Dickerson*, 2019-0754, pp. 4-5 (La. App. 4 Cir. 1/29/20), 291 So.3d 241, 244.

TBM suggests that despite *Central Props.*' finding that the tax sale conveys a tax sale title to the property as well as creates a lien and legal mortgage, its tax sale title did not constitute a legal burden on the Property or the property owners, such that the tax sale title could be considered a mortgage on the Property. TBM relies upon *In re Curley*, 572 B.R. 622, 627, (Bankr. E.D. La. 2017), 2017 WL 2923820.

---

tax lien that is purchased in the form of a tax sale title, albeit with future rights of ownership after due notice to all "tax sale parties" and the expiration of the redemptive period, as well as the filing of a suit to quiet title. *See, generally,* Comment, *Louisiana Tax Sales: A Mystery Unraveled*, 41 S.U. Law Rev. 345 (2014).

In *Curley*, the tax sale purchaser, AP, intervened in bankruptcy proceedings, claiming it was a creditor of the debtor. The bankruptcy court found that AP did not have a claim against the debtors, stating:

> The Tax Sale was completed prior to the Petition Date. Because the Tax Sale was complete, the tax obligation was satisfied. What remained was Debtors' right of redemption. That right burdened AP's ability to obtain title, but did not create an enforceable right to payment in favor of AP because as of the Petition Date, Debtors had not yet exercised their right to redeem. Thus, as of the Petition Date AP held no claim against Debtors.

*Curley*, 572 B.R. at 627–628. *Curley* reasoned that AP's ownership interest was held in suspense awaiting the termination of the redemption period and found AP was a party in interest, rather than a creditor. *Id.*, 572 B.R. at 629. Accordingly, TBM argues that inasmuch as *Curley* establishes that a tax sale does not create an obligation on the part of the tax debtor, it cannot be a mortgage as referenced in La. R.S. 13:2576(A)(3).

In rebuttal, Ms. Kasney references another federal bankruptcy case, *In re Anderson*, 16-11851, 2023 WL 4041291 (Bankr. E.D. La. June 14, 2023), to support her argument that TBM's tax sale title creates a legal mortgage. The *Anderson* Court, citing the Louisiana Supreme Court's decision in *Central Props.*, 2016-1855, p. 12, 225 So.3d at 449, recognized that "full ownership of adjudicated property—the right of use and possession, the right to enjoy, and the right to sell or encumber, . . . cannot be acquired by a tax lien purchaser until the redemptive period expires and there is a judgment in a suit to quiet title. Until then, the tax debtor retains substantial ownership in the property." *Anderson*, 2023 WL 4041291, at *3. In *Anderson*, the redemption period for the debtor to redeem her immovable property had not expired at the time the debtor filed the bankruptcy petition. *Id.* As such, the *Anderson* Court determined that the immovable property

was the property of the bankruptcy estate and that the tax sale lien purchaser was a creditor holding a bankruptcy claim against Anderson's bankruptcy estate. *Id.* at *3-4.

The Eastern District of Louisiana affirmed the *Anderson* bankruptcy court's ruling in *Sunset Harbour, LLC v. Anderson*, CV 23-2262, 2023 WL 9503364 (E.D. La. Dec. 5, 2023). The *Sunset Harbor* Court distinguished *Curley*, noting that after a review of the cases relied upon by the *Curley* and *Anderson* bankruptcy courts, it agreed with the analysis conducted by the *Anderson* court. The *Sunset* court reasoned:

> As explained by the bankruptcy court, under Louisiana law, the tax-sale purchaser does not buy the property itself, but rather the taxing authority's lien. The tax debtor remains the owner of the property and the inchoate title acquired at the tax sale can be defeated by the tax debtor's redemption when he or she pays the delinquent taxes. Thus, the "tax lien purchaser's position is analogous to that of a non-recourse lienholder with regard to a debtor in bankruptcy" because " '[e]ven if the [d]ebtor is not personally liable to the purchaser in a civil proceeding, the [d]ebtor's underlying obligation remains enforceable against her property,' " and " '[c]onsequently, the purchaser holds a claim for the [d]ebtor's equitable interest remaining in the [p]roperty including her right to use it and to possess it, or the monetary value thereof (the redemption price).' "

*Sunset Harbour,* 2023 WL 9503364, at *4 (citations omitted).

Likewise, this Court agrees with the results reached in *Anderson* and *Sunset Harbour* and their reliance on the Louisiana Supreme Court's decision in *Central Props.* We therefore conclude that the judgment obtained by the City for code enforcement violations and the fines imposed were rendered in accord with La. R.S. 13:2575(C)(1) so as to create a judicial mortgage on the Property. As such, La. R.S. 13:2576(A)(3) applies to require that "all actions to subject the property to any mortgage which existed before the sale be prescribed by the lapse of one year from the date of registry in the conveyance office of the deed to the purchaser."

15

Here, the facts are uncontested that TBM's predecessor received notice of the City Code violations, the hearing date, the May 14, 2015 Administrative Judgment, Notice of Daily Fines, notice of the writ of *fieri facias*, and that the Sheriff's Deed was duly recorded in the conveyance records. The filing of these judgments was done in accordance with the requirements of La. R.S. 13:2575 and La. 13:2576, and thus, created a judicial mortgage on the property upon their recordation. Hence, pursuant to La. R.S. 13: 2576(A)(3), TBM's right to quiet title had prescribed by the time it filed its Petition to Quiet Title on September 15, 2022.

Accordingly, having found that TBM's tax sale purchase amounted to a legal mortgage on the Property and La. R.S. 13:2576(A)(3) applied to impose a one-year prescriptive period from the date of recordation of the Sheriff's Deed for TBM to quiet its tax sale title to the Property, TBM's other claim that Subsection C(2) of La. R.S. 23:2575 was improperly applied to grant summary judgment is deemed moot.[7]

## CONCLUSION

---

[7] Although this Court declines to review TBM's alleged errors concerning the applicability of La. R.S. 13:2575(C)(2), we do observe that in *Sunset Harbour, L.L.C. v. City of New Orleans*, 2023-0379, p. 1 (La. App. 4 Cir. 11/29/23), 378 So.3d 157, property acquired through a tax sale purchase was later assessed with several City Code violations. These violations, similar in nature to the violations herein, included sanitation; weeds and plant growth; fences and walls; gutters and downspouts; stairways; handrails and guardrails; windows; door frames; and doors. *Id.* In finding that the administrative hearing officer properly imposed fines because the violations had not been abated, the Fourth Circuit noted that the failure to abate meant "that the Property sat blighted, as a nuisance, and as an eyesore in the community for at least an eight-month period." *Id.*, 2023-0379, p. 10, 378 So.3d at 164. Hence, *Sunset* implies that sustained, unabated violations are sufficient to reach a finding that a property is blighted or is a public nuisance without an express declaration from an administrative judgment designating the property as blighted.

We further note that La. R.S. 13:2575 expressly subjects the rights of a tax sale purchaser to the enforcement authority of the City to have liens and privileges against properties where violations have occurred. In accordance therewith, Subsection C(2) grants a tax purchaser the limited right to redeem the property in violation until one year after the right of redemption from the tax sale lapses. None of the tax sale purchasers timely exercised this right in the present matter.

16

Based upon our *de novo* review, no genuine issues of material fact and law remain to preclude the trial court's grant of summary judgment in favor of Ms. Kasney. Accordingly, we affirm the judgment finding that TBM's action has prescribed and dismissing its claims with prejudice.

**JUDGMENT AFFIRMED**